Our next case today, number 241323, Jaqueline Garcia-Navarro v. Universal Insurance Company. Will counsel for appellant please introduce yourself on the record to begin. Good morning, my name is Paulo Rodriguez.  You were just raising your microphone higher, so. Is it better now? Yeah. Can I have four minutes for rebuttal? Why don't you take three? Three. May I please take order? Let me ask you one question and then that way I won't interrupt you. Mr. Rodriguez, I take it that the argument you're making on behalf of your client is under Puerto Rico law, the parties are free to contract. At the time they contracted, their agreement, their meeting of the minds was what the law was at the time. So the fact that the Puerto Rico Supreme Court later may say it's different, their interpretation, their agreement dealt with what was agreed at that time. Am I correct in that? Half. Okay. My argument on appeal is different. On appeal my argument is that to get to where you were stating that we needed to go is to interpret the contract and to determine whether applying the Rivera-Matos decision retroactively advanced fairness and justice. The court first needed to consider the framework established by the Puerto Rico Supreme Court when, like in this case, a decision by the Puerto Rico Supreme Court does not say one way or the other whether a new rule has to be applied retroactively or prospectively, which is what happened in this case. In this case, in Rivera-Matos, the Supreme Court said, under professional exclusion, professional services exclusion, included in many insurance contracts, when there's a clerical task that is intrinsically related to the obligations of the insured, then that clerical task, intrinsically related, is included within the exclusion. Before Rivera-Matos in Puerto Rico and elsewhere, the rule was that clerical tasks were not included. I don't read. You're getting that from Verawit? Yeah. But there's a passage that says that in Verawit, but in that passage, at least as I read it, that passage arguably is just talking about, in the abstract, a clerical service is not a professional service. But when you then go into the next part of Verawit, it's hard for me to read that without the implication being that things that on their own might not be professional services, when intrinsically related to something that is a professional service, like meal preparation or something like that, can become a professional service. So in that sense, there seems to be some force to the idea that what Matos is doing is clarifying a potential ambiguity in Verawit, rather than rejecting the prior view in Verawit. In my view, what Rivera-Matos did was adopt the intricate related doctrine. How do you explain that second half of Verawit, then? Because there are certain activities that the nursing home was engaged in, that in the abstract, if I just described what it was, you wouldn't say, like, making lunch for my child, I don't think is a professional service. But I make the same lunch in a facility that's designed to provide care for an Alzheimer's patient, Verawit suggests that is a professional service. I have three points to make. Before we get into that, I'd like to stick with the issue on appeal, which is the one that I think merits reversal. To consider whether a decision is to be applied prospectively or retroactively, you have to go into several factors that the Supreme Court has laid out. A new rule, a new judicial rule, and I'll explain your point. What is a new rule? Again, you can rely on the district court's opinions. Not only three times, the district court ruled, first of all, at the summary judgment stage. We're trying to figure out whether Rivera-Matos is new relative to what they were saying before. Let me put it this way. Suppose all Rivera-Matos did was clarify an ambiguity in Verawit. So Verawit didn't clearly hold that a clerical service that was intrinsically related to a professional service is a professional service. Or clearly hold that it's not. Suppose it just was unclear on that point. You could read it maybe either way. And then Verawit clarifies clerical service intrinsically related to a professional service is a professional service. I see your point. Is that then a new rule for purposes of this retroactivity analysis? I understand your point, but that was not the way the court saw it. To help me, I just want to understand. Assume I'm right in my characterization of things. How would that affect the analysis of the new rule case law that you're asking us to apply? Well, it's a fair point, a good point. But, again, you have to look at the law before Verawit and Rivera-Matos. I just want to get an answer to Mike. I'm getting a feeling that the answer is not going to be favorable to you. No, it's a good argument and it's a good point. But, again, the district court did not see it that way. I didn't see it that way. Another way of putting it, for you to win, is it necessary for us to conclude that Verawit did establish in some clear way that clerical services, even when connected to a professional service, were not a professional service? Well, Rivera-Matos did that. Rivera-Matos established that clearly and adopted. Is it important for you that Verawit held the opposite? Well, the way I see it, and respectfully, no. Because in Rivera-Matos, the rule was adopted for the first time. Okay, so even, in other words, if it was unclear after Verawit, the fact that they clarified it in Vera-Matos means that we should be worried about applying it retroactively? It goes a little bit deeper than that, but it's not that it wasn't clear. It was not the doctrine applicable in Puerto Rico before Rivera-Matos. Rivera-Matos adopted that doctrine and said services intrinsically related to a professional service are included as a clerical task that falls within the professional service exclusion. Before Rivera-Matos, that was not the rule in Puerto Rico. And to apply Rivera-Matos retroactively, the court needed to consider whether the application was in the interest of justice, whether fairness would be advanced, and also the fact that this is a contract dispute matter over the interpretation of a professional exclusion in a policy, an insurance policy. The district court did not do any of that. Sorry, but did anybody ask the district court to do that analysis? The applicable Puerto Rico law, binding Puerto Rico law, does not need to be asked of the court. No, no, no one did. Universal insurance. You're asking us to reverse the district court for failing to do an analysis that no one asked it to do, correct? No, no. No, Your Honor, respectfully. I'm asking to reverse the district court for not applying the binding framework, legal framework, that needed to be applied. That nobody told it about and asked it to apply, correct? Let me give you an analogy. I don't want an analogy. Did you ask the district court to perform that analysis? No one did. But that's the legal analysis that is binding. If a litigant who is asking for it. What you're saying is that the district court applied in its reconsideration after ruling in your favor, applied the wrong law, you know, as a matter of law. That's what I'm saying. No analysis was needed. It's just simply committed. No, no, the district court needed to apply the framework, the legal framework that the Supreme Court applies or has mandated to be applied. I think, Judge, and I don't want to speak for my colleague, but the court has to do that, but once it has to reconsider. I know you asked for reconsideration, but don't you have to tell the court specifically, do this analysis, or by merely saying, Judge, this is a controlling case, that's enough? In my brief, I cited a case law from the Supreme Court from this circuit, from the Seventh Circuit, from the Sixth and the Eighth, stating that the law cannot be forfeited. And this court has the obligation to serve. What those cases establish is that the court has the ability, in essence, to apply the correct law. It did not say that we reverse lower courts on issues that were not raised, that we must reverse them on issues that were not raised before them, unless they're jurisdictional. But the issue was raised. I argue, point blank, that it was unfair for my client to, I mean, for Rivera-Matos' decision to be applied retroactively to this case. What I did not do, and no one did, Universal didn't do that. Universal asked for retroactive application of a usual ruling without providing the court with the legal framework that is used in Puerto Rico. And the court has an independent obligation to apply, to recognize that legal framework and apply it to the case, because it's a controlling law. For example, I- What did you say to the district court? When they come in and they say, we have this new case, last second, we were going to lose, but now we're going to win. And you should apply this case. And what do you say? I said, this case is not, it should not be applied retroactively because the controlling facts of this case happened six years ago. I said, it is unfair to apply this case retroactively. This case deals with a matter of contract interpretation. So you went through over the factors. Yeah, yeah, yeah. But without-  Without citing the Puerto Rico law that disclosed those factors. And this is the important thing. What the district court did was, there's Rivera Matos. It doesn't say whether it should be applied retroactively or prospectively. I'm bound, because I'm sitting on diversity, to follow the Puerto Rico- What is our review? Let's say you went through the factors and you didn't say, here's X case saying that's the framework. And the other side doesn't mention any framework. Just says, as if any case that comes out in response to the factors you identified. I forget now. What did the district court say in its report? The court said, I'm not going to consider them. And you can go to page 52 of the decision. I'm not going to consider those factors because Rivera Matos binds me. And effectively, all of, and what, suppose the district court had gone through them. And makes a judgment, well, it seems a little unfair. This is such an unusual case. It is a contract case. Weighs them all out. Comes out either your favor or the other favor. On review, do we review that de novo? No, no. Or is that abuse of discretion? In that scenario, I will agree with you. It will be abuse of discretion because- When you say you would agree with me, but what is the law in Puerto Rico on that question? Does a reviewing court review the analysis for abuse of discretion when it's that kind of equitable judgment? Or does it review it de novo? The legal law here in default, your review, I think, will be for abuse of discretion because the judge applied the law. Well, let me backtrack a little bit. Aren't we applying Puerto Rico's law of retroactivity about Puerto Rico law? Yeah. The law about retroactivity. Is that Puerto Rico law? It is. But we're talking about the standard of review here, right? Because you're the one reviewing the case. So as to the standard of review, my understanding is that you should review on their de novo because it is an issue, a legal issue. The judge did not apply the law. And you review legal conclusions on the application of the law de novo, as I understand it. Is that how a Puerto Rico reviewing court in Puerto Rico- I think- I think court would do it? In Puerto Rico courts, local courts- Yeah. Would the reviewing court review that framework de novo? Okay, if- let me make the distinction. If I understand where you want me to go. If the Supreme Court get a case by an appellate court in which the appellate court did not apply the law that needed to be applied, the legal framework that needed to be applied, the review- That's not what I'm asking. Here's what I'm just wondering. Does it make sense for us to be doing this analysis in the first instance rather than having the district court do it? And the reason I'm asking that is if it's a kind of equitable assessment of a lot of factors, none of which the district court has yet addressed because it says it didn't need to. And if, in fact, it does need to and the factors were at least raised, we could either do it now if it's de novo. But if, in fact, we would give some deference to how the district court made that calculation, then it's a little odd for us to do it in the first instance rather than having the district court weigh in. So I'm trying to get a sense. In Puerto Rico courts, would the reviewing court give some deference to how the district court weighed those factors in making the retroactivity analysis or not? But, I mean, I think I don't- you know, is there case law one way or the other on that? I have not done the research. I'm sure that there is. But the standard review is similar to the standard review here on appeal. You could do that, what you're proposing. But bear in mind that you're here on a stipulated record. You have all the facts that goes into the analysis. And you have a written decision. And you have case law that I cited from circuit court stating that when you review a decision of the lower court that does not apply or mention the applicable case law, you have an obligation to come back to the applicable case law, review and apply it, even if the parties below did not mention the applicable case law or the district court did not apply the applicable case law. Let me ask you one last question. Nobody ever requested the district court to certify the matter to the Puerto Rico Supreme Court for purpose of retroactivity, correct? No, because- And would that be necessary at one point if this case goes back or we keep the case or that analysis is not- It should not be because this issue will be back to this court in another case, most likely. And this is why- All the more reason to certify it. No, no, no. Because if you certify that issue, it will come back in a different case. Then we'll have the benefit of what the Puerto Rico Supreme Court says we're supposed to do. No, no. Let me explain what I'm saying. Okay. The issue here is not whether Rivera-Matos applies retroactively or not. That's a sub-issue. The main issue is what the district court is obligated to do under Puerto Rico law when there is a judicial ruling by the Puerto Rico Supreme Court that does not state anything regarding prospectivity or retrospectivity. So you'll have more in different contexts, of course. You'll have in the future another case from the Puerto Rico Supreme Court that does not say anything about retroactivity. And a district court sitting in diversity having to apply that case may be doing what happened in this case, not going through the factors under Puerto Rico law. But one of those factors might require for the district court, if we send the case back to the district court, for example, to apply the factors that you say, one of those factors might require more, one or more factors might require that the district court, rather than making up Puerto Rico law, like let me ask the Supreme Court, would that be retroactive? And if it's not retroactive, it's even beneficial for you. If it's retroactive, the court still has to do the whole analysis. No, Judge, because I think I'd like to separate the two issues. We're not dealing, the bigger issue is not whether Rivera-Matos applies retroactively or not. You might not get, most likely, you're not going to get an issue over Rivera-Matos again because that precedent, without a doubt, applies prospectively to all the contracts that are in place already. What you will get in the future is another case from the Supreme Court of Puerto Rico with our ruling about prospectivity or retrospectivity that you'll have to go through the factors that are established clearly, well settled by the Puerto Rico Supreme Court, and decide whether to apply prospectively or retrospectively. If you don't rule that today and tell the district court in Puerto Rico that these are the factors mandated under these circumstances. I have to say, that sounds to me like an invitation to complete uncertainty in applying Puerto Rican law in federal court. Because I think we all understand there is a general presumption that case law applies retroactively, applies to the case in which it's applied, and applies to other pending cases. There are rare exceptions, agreed, but the general presumption is retroactive and prospective application for case law. And you're saying every time the Puerto Rican Supreme Court, or for that matter appellate court, modifies the eerie mix of what we ought to predict of Puerto Rican law, and does not explicitly say this is applying retroactively, that the federal district courts will have to do a case by case, equitable analysis of applying that case law. No, no, no. That imposes an extraordinary burden on both district courts and on the Puerto Rican Supreme Court. I invite you respectfully to read the Puerto Rico case law. I have read it. And it says expressly decisions that we issue could have retroactive effect or prospective effect. If we don't mention, and this is the key part, if our decisions do not mention that our ruling applies prospectively or retrospectively, there's an analysis that needs to be done in every case. And in Puerto Rico, you have two cases that I provided to you. The lower courts go through that analysis. So it's not uncertainty. The framework is there. And the binding Puerto Rico precedent requires the lower courts to do that analysis. And in this case, that did not happen. Again, you have made a very important distinction. And I'm going to invite you to read the dissenting opinion on the Flores case that Universal cited. In that case, the Puerto Rico Supreme Court, Flores Concepcion, they cited through their brief a dissenting opinion about that case. The majority opinion in that case issued a new ruling regarding the interpretation of the application of a rural city procedure to an administrative process. In that case, the Supreme Court said we are issuing this ruling, new ruling, due to concerns of justice. We're not going to apply that ruling to this plaintiff. But go to the dissenting opinion. They judged their set. And you mentioned this. When we have a case and we issue a decision, that decision will always, well, not always, in most cases, it will be applied retroactively. Because we are obligated to do that by the case and court controversy requirement of the Constitution. Otherwise, we will be issuing an advisory opinion. But that's different from what we have here. We have here a new ruling by what I believe is the adoption of a new doctrine by the Puerto Rico Supreme Court. And the application of that new doctrine to a case that had been pending for six years, five years, before that doctrine. And applying that case, which has nothing to do with my clients, to this case. And that's different. For these circumstances, Your Honor, the Supreme Court, and again, I don't mean to belay the point, the Supreme Court has established clearly what is the legal framework that needs to be carried out to determine whether prospective or retrospective application should be given to the new or adoption of the new rule. I understand your position. Thank you. All right. Thank you, Counsel. Will Attorney for Appley please come up and introduce yourself on the record to begin? Good morning. May it please the Court, Counsel Jose Andreu Collazo on behalf of the Appley. The bottom line here is that this Court cannot entertain appellant's sole argument on appeal. Not only because she waived it in the lower court. Does it make sense to say it was waived when all of the factors, many of the factors that are relevant to the framework, were identified below in objecting to your request that it be applied retroactively? No. And the district court said, I don't need to consider those factors? Or is that not what happened? No, Your Honor. That is not what happened here. What appellant challenged the applicability of Rivera-Matos in this case on contractual grounds. Not on grounds of whether Rivera-Matos should have been applied prospectively or retroactively. It was on contractual grounds. Meaning what? Meaning what? Her main argument here was that at the time the policy was executed between the parties, Rivera-Matos had not been decided. And therefore, it could not have factored in the decision making here. Well, that is a misplaced argument in as much as the only relevant interpretation here of what the professional services exclusion of its scope. It's the Supreme Court decision in Viruet and Rivera-Matos. Because it is a question of law. And was the Viruet decision in place at the time of this contract? No. But, Your Honor. So at the time of this contract, neither Viruet nor Rivera-Matos had been decided? Correct. And also, Your Honor, if I may ask. And is there anything in the record about, I mean, other than the text of the agreement. But when I read Viruet and these other cases, none of them seem to be assuming that the right inquiry is to look at extrinsic evidence of the party's understanding of the phrase. They just seem to take the phrase. And then they do an analysis of the meaning of that phrase. That is correct, Your Honor. In Viruet, the Supreme Court. And there's nothing in the record here to indicate that they had some specialized understanding of the meaning of that phrase at the time they entered into the agreement. I take it. No, Your Honor. But here, first of all, in Rivera-Matos, the policy at hand in Rivera-Matos was also executed before Viruet. So here, the relevant, inasmuch as it is an issue of law, the scope of the professional services exclusion and its reach is an issue of law. I guess what I'm getting at, it may be one thing if one of the parties came in and said, look, we had a specialized understanding. So whatever you think this meant, it actually didn't mean that. But there's been no argument like that here. The question is just what was their understanding of the law at the time. And at the time this was enacted, neither Viruet nor Rivera-Matos was on the books. Is that the state of the world? Correct. And Viruet and Rivera-Matos do not consider extrinsic evidence on the parties' intent, on the contracting parties' intent. Yes. But the bottom line here, Your Honor, is that this court cannot even reach that issue because this court must not lose sight that this is a diversity case. So the district court, because the Supreme Court in Rivera-Matos did not grant the decision solely prospective effect, here, under the e-reductant, the district court had to apply Rivera-Matos. In Puerto Rico law, if the Supreme Court says this is in a civil case, we're interpreting the law this way, and it doesn't limit it prospectively. It's retroactive. Is that what you're saying? What I'm saying is, Your Honor, that under the e-reductant, the district court cannot reach that question. In absence of an express ruling from the Puerto Rico Supreme Court in this case. Then going back to what I asked Mr. Rodriguez, your opposing counsel, shouldn't this be a matter that we or the district court should certify to the Puerto Rico Supreme Court? Well, Your Honor, I don't believe it's a certifiable question because ultimately it is not a decisive issue in this case because there's a threshold question that must be decided here on whether this court has the power to even rule on the temporal efficacy of Rivera-Matos. How could we not? That's a question of Puerto Rico law, isn't it? Yes, Your Honor. However, under the Vandenberg rule, the U.S. Supreme Court's decision in Vandenberg, a district court sitting in diversity has to apply the prevailing... The prevailing law comes with the retroactivity law. Well, no, Your Honor. Why doesn't it? Well, Vandenberg establishes a default retroactivity rule where when the state highest court has not issued a ruling on the temporal efficacy of a decision, the district court sitting in diversity has to apply it retroactively to the case. Even if the law of the state is to the contrary? Well, no, of course not. So then that's the question. Is the law of Puerto Rico to the contrary on retroactivity analysis? No, no, no, Your Honor. It's not. Okay, well then that has nothing to do with whether we can reach it. You're just asking us to decide in your favor on that point of Puerto Rico law. So why is it that under Puerto Rico law this applies retroactively? Well, Your Honor, for a number of reasons. First, as you, Judge Barron, touched upon, it is not... Rivera-Matos did not establish a new rule. It did not overrule BIDUED at all. And as you touched upon it, Judge, in BIDUED, BIDUED is open to Rivera-Matos in the sense that it established that simple clerical tasks that are independent, and I stress the word independent because that's the wording used by the Supreme Court, independent to the rending of professional service, are not excluded under professional services exclusion like the one at hand. But that leaves the door open to Rivera-Matos in the sense that there might be... And even stronger than that, in BIDUED, they go on to conclude that the professional services exclusion applied in that case to some activities that independently wouldn't seem to meet the test of professional services that BIDUED applied, so that it's... To me, it's hard to read BIDUED as not saying things that don't meet the test independently can meet the test when intrinsically related. That is correct. In BIDUED, Your Honor, the issue at hand was whether not supervising an Alzheimer's patient and to supervise her and to prevent her from swallowing a piece of plastic, which independently can be... It's definitely... Most people will determine that it's a purely clerical task, but because it had a connection to the rendering of the professional services, that it was excluded. It was considered... Isn't it the case that the Chief Justice of Puerto Rico dissented in BIDUED and then also in Rivera-Matos, if I remember? And on the same... In other words, the ground that... As I understood, the dissenting position in Rivera-Matos was that this is not making sense, this intrinsically related point for janitorial services, right? I think so. But I think, if I understood it, that that same justice also dissented in Rivera-Matos, which would make sense if that would be a consistent position to dissent in both. In all honesty, Your Honor, I don't remember if there was a justice that dissented in BIDUED. I know that in Rivera-Matos there was a dissent, yes. Let me ask you, if we were to certify... This will be the most simple certification. The question number one would be, is Rivera-Matos a new rule? And if the Supreme Court says, no, it's clarified, that's you win, correct? You would agree with that? Yes, we would agree, Your Honor. And if the Supreme Court said, yes, it is a new rule, then the second question we would give it in that certification would be, if so, then, you said it's new, then is it retroactive? Wouldn't that be valuable to both you and, you know, because you might prevail just on the certification, and that's the end of the story. And even if it's a new rule, it may be retroactive. But, again, I don't see anything in Puerto Rico case law. Again, we have to do a Puerto Rico law analysis, and it's not crispy, clear, 100% of what we have to do. And, of course, we can reasonably predict, but this is fairly new. So that's, you know, I don't know. Well, respectfully, Your Honor, I don't believe it is a certifiable issue because the issues that we raised in our brief, the first two especially, are of a jurisdictional nature because they touch. We'll put that aside. Assume we don't agree with you on those points. Yes. Then what about Judge Helpe's question? Well, Your Honor, I mean, ultimately it's not a decisive question. And because it's a question of mixed question of federal and state law, the Puerto Rico Supreme Court usually declines to hear those sort of questions. I have to disagree with that because when I was a district judge, for example, I certified a question that involved access to closed communities with private streets. It involved a federal First Amendment issue, but it also involved a mixed question of whether streets could be public in Puerto Rico, and the Supreme Court decided that case. So there is – that's maybe 10 years ago – there is some precedent that – and, again, the Supreme Court goes, hey, we decline to certify, but there's no technical impediment. Can I ask you just on this new rule point? I'm not sure I'm following where Puerto Rico case law is on your understanding. This retroactivity analysis, if we were to certify the question of is it a new rule, is that the right question under Puerto Rico law for determining whether it's retroactive or not? Yes, Your Honor, because I think it was in the Rosario Dominguez case. The Puerto Rico Supreme Court established that prospectivity can only be considered if it's a new rule, and a new rule is defined as one that overrules a previous precedent or a new rule established in the new decision that was not foreseeable, that was not reasonably foreseeable. So we just could – so unless we – so it would follow that if it's not a new rule, it would definitely apply retroactive. That's your understanding after Dominguez. Correct. So then that would be dispositive of the case. That would be dispositive in that sense, yes, on if the threshold issues, jurisdictional issues are met. Yeah. Yes, Your Honor. And thank you. So we ask for this court to affirm the district court's decision and dismiss the appeal. Thank you for your time. Thank you, Counsel. Attorney Rodriguez-Velez, please reintroduce yourself on the record. You have a three-minute rebuttal. Attorney Rodriguez for the record. Your Honor, B-Red does not have a dissenting opinion. Is there a dissent noted? No. I have the decision here. There's not a justice that notes that they dissented even though there's no opinion? Let me see. You may have a point. I'll have to check. I don't want to consume my time. There may be or may not, but there's no written dissenting opinion. So we don't know the reasons why they dissented. No, but it's the same justice, I think, that dissents in Rivera-Montes. You may be right. I really don't know. But, again, we don't know why he dissented. We do not. All right. So you asked whether below the parties question the intention when the contract was entered into. Did I read that question correctly, Judge Barron? Why don't you just say what you were going to say? Yeah, yeah, because below, one of my points was that it was the burden of Universal to show that when the – and this is the law. It's not my point. The law is for Universal to show that when the intention of the party, when the contract was entered into. And we argued and we presented evidence why there was no meeting of the mind as to the exclusion of professional services, including clerical tasks. So that's there, and I can pinpoint you to my motion. It's in the appendix. And it's my opposition to the summary judgment motion. What would you think about certifying the questioner has no law? I was going to address that. There are two – Judge Shelby is saying he's thinking about two issues. First of all, I'm going to take the second one first, whether Rivera-Matos should be applied retroactively. When – and again, I'm going to refer now to the Puerto Rico Supreme Court case law. Because you only have one minute left. Can I just redirect you? What do you think about us certifying the question of whether Rivera-Matos constitutes a new rule for purposes of the prospectivity analysis in Dominguez? You have discretion to do that. I believe Rivera-Matos adopted a new doctrine that was not in place in Puerto Rico, but obviously there's room for disagreement. As to the second question, though, the issue whether retroactivity should be given to Rivera-Matos, if that's an issue that is decided case by case, you certify that question to the Supreme Court, they will have no basis to apply it to whether to apply it or not to this case, because they don't know the facts. They don't have the record for that. Oh, but they will. If we certify, they will send everything we have. That would be respectfully deferring the work of this honorable forum. No, because we limit the question. And we say this is the record, but they look at the record and they see why. We certify many, many, and we explain exactly. We have to issue an opinion. We don't simply certify these two questions. We say this is our conundrum, and this is why we can't answer this question, and we believe you're in a better position as the Commonwealth's highest Supreme Court. Can you answer this question for us? And that's how it goes. My position as to that respectfully will be that the district court and you have all the elements, factual elements, to decide whether to this case, under the ad hoc analysis that the Puerto Rico Supreme Court requires, whether to this case the decision should be applied retroactively or not. Not to every case.  Judge Hamilton, do you have a final question? Well, I just want to make sure. Well, does it make a difference that your client was not a party to the contract in question? My party had a claim. She was not a party to the insurance contract, correct? Two points. Is that correct? Then make your two points. She was not, of course. Right. But she had an insurance claim against that contract, and during this litigation, as part of a settlement agreement, my client received, under an assignment of rights, all the rights of the insured in that contract. Thank you. Thank you. Thank you, counsel. That concludes arguments in this case.